```
                                                                      1

1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - - -X
3
     UNITED STATES OF AMERICA,        : 16-CR-00050(DLI)
4                                     :
                                      :
5                                     :
            -against-                 : United States Courthouse
6                                     : Brooklyn, New York
                                      :
7                                     :
                                      : Monday, March 13, 2017
8    CHARLES THOMAS,                  : 10:30 a.m.
                                      :
9              Defendant.             :
                                      :
10
     - - - - - - - - - - - - - - - -X
11

12        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
            BEFORE THE HONORABLE DORA L. IRIZARRY
13             UNITED STATES CHIEF DISTRICT JUDGE

14                    A P P E A R A N C E S:

15
     For the Government: BRIDGET M. ROHDE, ESQ.
16                         Acting United States Attorney
                           Eastern District of New York
17                           271 Cadman Plaza East
                             Brooklyn, New York 11201
18                      BY:  TARSHA A. PHILLIBERT, ESQ.
                             ALEXANDER MINDLIN, ESQ.
19                           Assistant United States Attorneys

20   For the Defendant:    LAW OFFICE OF JOYCE C. LONDON
                             59 Maiden Lance
21                           6th Floor
                             New York, New York 10038
22                      BY:JOYCE C. LONDON, ESQ.

23   Court Reporter:   Stacy A. Mace, RMR, CRR
                       Official Court Reporter
24                     E-mail:  SMaceRPR@gmail.com

25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.


                SAM     OCR     RMR     CRR     RPR
```

Proceedings 2

1  (In open court.)
2  THE COURTROOM DEPUTY: Criminal cause for
3  arraignment, Docket Number 16-CR-50, United States versus
4  Charles Thomas.
5  Please state your appearances.
6  MS. PHILIBERT: Tarsha Phillibert for the United
7  States; and with me is Assistant United States Attorney, Alex
8  Mindlin.
9  MR. MINDLIN: Good morning.
10 THE COURT: Good morning to both of you.
11 For the defendant.
12 MS. LONDON: Joyce London for Charles Thomas.
13 Good morning, Your Honor.
14 THE COURT: Good morning. Good morning, Mr. Thomas.
15 THE DEFENDANT: Good morning, Judge.
16 THE COURT: I am going to ask everyone to remain
17 seated and to speak into the microphone so we can hear each
18 other better.
19 The Court advanced this case and put it on the
20 calendar because the Government filed a Superseding
21 Indictment; and I note that the Government did that, first of
22 all, without warning, and also did it just a few days before
23 the Court was supposed to post its draft charge in this
24 matter. Apparently, the Government did not think that
25 superseding the Indictment might have some impact on the

Proceedings 3

1  Court's charge.
2        I find the timing of it, besides being inconvenient
3  and besides it being done as a surprise, rather discourteous
4  and with a lack of consideration for the Court's time and
5  resources.
6        First of all, Mr. Thomas, the Government has filed a
7  Superseding Indictment charging you with three counts.  Now,
8  these three counts, the first two counts, Count One and Count
9  Two are, essentially, the same as they were in the original
10 indictment.  Except in the original indictment, and if you
11 will recall, Count One charges you with a Hobbs Act robbery
12 conspiracy that occurred on or about January 18th, 2016.  And
13 originally you were charged with Mr. Reid and others.  In this
14 new Indictment it just charges you alone acting with others.
15       Do you understand that?
16       THE DEFENDANT:  Yes.
17       THE COURT:  But the charge is, basically, the same.
18       Count Two charges you with a Hobbs Act robbery, that
19 is the object of the conspiracy that is charged in Count One.
20 And, again, that occurred on or about January 18th of 2016.
21 And in the first Indictment you were charged together with
22 Mr. Reid and others.  This new Superseding Indictment just
23 charges you acting together with others.
24       Do you understand that?
25       THE DEFENDANT:  Yes.

1            THE COURT:  Okay.
2            Now, in Count Three, which charges possessing and
3    brandishing a firearm during crimes of violence, the original
4    charge, which related to the Hobbs Act robbery that is alleged
5    in Counts One and Two, charged Adene Reid together with
6    others.  Mr. Thomas is not named.
7            Now in Count Three, Mr. Thomas, you are charged with
8    possessing and brandishing a firearm during crimes of violence
9    on January 18th of 2016 within the Eastern District of
10   New York acting together with others, that you did knowingly
11   and intentionally use and carry one or more firearms during
12   and in relation to one or more crimes of violence, to wit the
13   crimes charged in Counts One and Two, and did knowingly and
14   intentionally possess such firearms in furtherance of said
15   crimes of violence, one or more of which firearms was
16   brandished.
17           Do you understand that charge?
18           THE DEFENDANT:  Yeah.
19           THE COURT:  How does your client plead to these
20   charges, Ms. London?
21           MS. LONDON:  Not guilty, Your Honor.
22           THE COURT:  I would like to know what the thinking
23   is, first of all, in bringing the Superseding Indictment and
24   the timing of the Superseding Indictment, especially when we
25   have already scheduled this case for trial and there was

1  motion practice in this case.
2              MS. PHILIBERT:  Your Honor --
3              THE COURT:  I said to remain seated and speak into
4  the microphone, please.
5              MS. PHILIBERT:  The Government would first like to
6  apologize to the Court for the timing on bringing the charges
7  in the Superseding Indictment.  This is not at all an excuse,
8  but I just would like to mention to the Court that Mr. Mindlin
9  and I are both new to the case and we assessed the facts
10 underlying the case in both the original indictment, the facts
11 relating to the defendant, and based on our assessment decided
12 to add that new charge.  We understand that the Court is of
13 the view that there is an element of surprise.  And, again, we
14 apologize for that.
15             From the perspective of the defendant, however,
16 there is no new evidence that the defendant was not aware of.
17 The gun charge was added simply as a result of, again,
18 Mr. Mindlin and I looking at the facts of the case and
19 deciding that it was appropriate.
20             THE COURT:  You know, that is not a little charge,
21 the brandishing of a firearm.  That is not a little charge.
22 That carries with it some very serious consequences for
23 Mr. Thomas.  And Ms. London is more than capable of speaking
24 on behalf of her client, but if it were me as a defense
25 attorney and as a defendant looking at the original

1  Indictment, given that both Mr. Reid and Mr. Thomas were
2  explicitly named in Counts One and Two and charged as acting
3  together with others, but then Mr. Reid alone is charged in
4  Count Three brandishing a firearm in the original Indictment,
5  acting together with others, if I were Mr. Thomas I might
6  think that charge does not relate to me at all.  That charge
7  does not relate to me at all because of the way the Indictment
8  was charged.  And I would assume that these indictments are
9  being reviewed by a supervisor looking at the same evidence
10 that you looked at.
11          I don't know, Ms. London, I mean that is how I look
12 at it.  I mean this is not just a little charge that you are
13 adding here and that you are changing.
14          Ms. London.
15          MS. LONDON:  Your Honor, you are echoing the
16 sentiments that I had even more vehemently.  When I learned
17 about this charge, I had a fairly heated discussion with the
18 Government about it.  I thought it was inappropriate.  The
19 Government explained to me that they did reassess the facts,
20 but one of the facts that they reassessed and one of the facts
21 they admitted in the conversation, which I am sure they wish
22 they hadn't said now, but given that Mr. Thomas may well be a
23 career criminal, the guidelines on his underlying Hobbs Act
24 robbery case would come in over the statutory maximum of
25 20 years.  So you add another seven years to this and my

Proceedings                                                              7

1  comment was, You want this young man who is still in his
2  twenties to be facing a 27-year sentence?  That's what you get
3  for a murder.  I was outraged, Your Honor.
4          I have wondered since and whether the underlying gun
5  charge may have been presented to the grand jury initially and
6  they didn't indict.  When a defendant pleads to an Information
7  he is always told the grand jury may not indict.  I have no
8  facts to back that up, but it's something I certainly intend
9  to look into.  But I feel that this is the most heavy-handed
10 prosecution, that a gun charge is totally unnecessary.  And
11 while, as the Government claims, it doesn't add any new facts
12 to the defense preparation, they are welcome to sit on this
13 side of the table and prepare the defense.
14         On the other hand, it does raise legal issues, Your
15 Honor, and there is a legal issue that I do have to raise in
16 this case.  And I've raised it before with, Your Honor, and I
17 have a ruling in <u>United States versus Biba</u>, but in order to
18 represent Mr. Thomas effectively I do have to raise a <u>Johnson</u>
19 motion and raise the issue to preserve it that robbery is not
20 a crime of violence for legal purposes for the addition of the
21 924(c) count.
22         And while Your Honor does not become involved in
23 plea negotiations, compounding, compounding this bludgeoning,
24 this bringing out the nuclear weapon to kill an ant, is the
25 fact that the Government has advised me that there will be no

1  plea offered to Mr. Thomas, where Mr. Reid was given a plea
2  that didn't included a 924(c) and he was the one that went
3  into the store and brandished the gun, where the Government
4  alleges Mr. Thomas is the get-away driver.  The disparity is
5  overwhelming.
6           I don't understand where this is coming from.  The
7  Government assures me that they have the legal authority to do
8  it.  That doesn't necessarily give them the morale authority,
9  but that is an issue for another time.
10          So, Your Honor, I do need to make motions in this
11 matter.  I do share your outrage.  I think the real victim
12 here is Mr. Thomas.
13          MR. MINDLIN:  Your Honor, I am happy to respond if
14 it would be helpful to Your Honor.
15          THE COURT:  Yes.
16          MR. MINDLIN:  Yes, so there was a lot said just now
17 and so I am going to try to respond to it methodically, and if
18 I miss anything I'm happy to come back to it.
19          I don't share Ms. London's recollection of the
20 conversation we had.  Ms. London certainly expressed her
21 strong sense that this charge was inappropriate for her
22 client.  The discussion about the guidelines and the statutory
23 maximum is not actually consistent with my own recollection of
24 that conversation.  Just so that's out there.
25          With respect to the gun charge, I would emphasize

1  again that there is no --
2           THE COURT:  But it is out there.
3           MR. MINDLIN:  What's out there?  I'm sorry, Your
4  Honor.
5           THE COURT:  It is out there.  It is out there.
6           MR. MINDLIN:  What's out there?
7           THE COURT:  The fact that the brandishing enhances
8  the punishment significantly in this case.
9           MR. MINDLIN:  Your Honor, I agree with that.
10          THE COURT:  And I have to share the skepticism that
11 Ms. London expresses as to what went on in the presentation in
12 the first grand jury and whether or not in the second
13 preparation the same evidence was presented, whether or not a
14 no true bill was returned against this defendant by the first
15 jury.
16          MR. MINDLIN:  Your Honor --
17          THE COURT:  And you cannot --
18          MR. MINDLIN:  -- my understanding -- I'm sorry, I
19 don't mean to interrupt you.
20          THE COURT:  I am not sure what the practice is in
21 federal court because in the 13 years that I have been on this
22 bench I have not had to litigate or have not had any
23 litigation, I should say, before me concerning the propriety
24 of grand jury proceedings in federal court.
25          And if you can indict a ham sandwich in state court,

1  the Feds can certainly indict the pig before it is even cured
2  and cut into ham.  And I have to wonder about the propriety
3  about what was done here with respect to the presentations and
4  what exactly was presented the first time around.  Because in
5  state court you would not just be able to go back to another
6  grand jury and add another charge like this to supercede like
7  this without the permission of the Court.
8              MS. PHILIBERT:  Your Honor --
9              THE COURT:  I do not know what the law is in federal
10 court.  I do not know.
11             MR. MINDLIN:  Your Honor, I do not believe that we
12 need the permission the Court to supercede, although as my
13 colleague --
14             THE COURT:  That is not what I am talking about.
15             MR. MINDLIN:  I'm sorry.
16             THE COURT:  You can supercede, but what you have
17 done here is beyond slippery and slimy because the defendant
18 was never given any notice in the entire time that this case
19 has been pending for over a year that he was indicted or
20 charged with the brandishing of the firearm --
21             MS. PHILIBERT:  Your Honor --
22             THE COURT:  -- given the way that the initial
23 Indictment was framed.  And if Mr. Reid was the one who
24 actually went into the location and actually brandished the
25 firearm, that is not to say that Mr. Thomas would not be

1   accountable if he was aware that there was a firearm and that
2   his cohort or co-defendant or co-conspirator, however you want
3   to call him, went into the location carrying it.  He should
4   have been or should have known under the law or under the
5   facts such as they were, at least it is for the Government to
6   prove that he should have known that the firearm would have
7   been brandished or that it would have been used.
8           So I do not understand for the life of me why he was
9   not actually named in the first indictment.  So for over a
10  year he has not had notice.  For over a year we have been
11  going back and forth here to court dealing with this case, and
12  then for the Government to say there will not be any plea
13  offer as to Mr. Thomas, and yet Mr. Reid brandished the gun --
14          MS. PHILIBERT:  Your Honor, if I may.  There was, in
15  fact, a plea offer that was presented to Mr. Thomas earlier on
16  and that plea --
17          THE COURT:  Earlier on when?
18          MS. PHILIBERT:  I am not sure of the exact date that
19  it was submitted.
20          THE COURT:  I am talking about post indictment now,
21  superseding.
22          MS. PHILIBERT:  On the original indictment there was
23  a plea offer that was presented and it did include -- with
24  respect to the offense level, it did include the fact that a
25  firearm was brandished, and that plea agreement was rejected

Proceedings 12

1 by the defendant. And so when Ms. London says that there was
2 no plea offer presented, that's not accurate because there was
3 earlier on and it was rejected.
4     MS. LONDON: Your Honor, I would like to respond to
5 that.
6     THE COURT: Yes.
7     MS. LONDON: The Government is correct, there was an
8 initial plea offer. I reviewed that offer. The guidelines in
9 that offer were fairly similar to those with Mr. Reid. I felt
10 that the Government had made a serious error in the
11 calculation of Mr. Thomas's criminal history and there was a
12 possibility or even a probability that he could come back --
13 that the Probation Department might find him a career
14 offender.
15     I was really bothered by the fact that he might take
16 a plea to something that would expose him to five to six or
17 seven or eight years at maximum and come back with guidelines
18 that were, perhaps, in the 24 to 25-year range. That is not
19 the way to go about disposing of a case where -- in the hopes
20 of finality.
21     So the Government then came back with a revised plea
22 offer. The plea offer that came back was a plea to the
23 Indictment as it then stood without a 924(c) where the
24 guidelines came in above the statutory maximum, so that the
25 plea to the Hobbs Act conspiracy was kept at 20 years. So

SAM    OCR    RMR    CRR    RPR

Proceedings 13

1  there was no difference for Mr. Thomas in pleading to the
2  Indictment or pleading to the agreement, the plea agreement.
3  Actually, the only difference was if he took the plea
4  agreement he would give up his right to appeal or to challenge
5  the career criminal history in return for zero benefit.
6       So the initial plea offer was absolutely and utterly
7  flawed, and it was rejected by Mr. Thomas and I because I
8  couldn't give him any assurance that the guidelines presented
9  in that plea agreement were likely to hold.  In fact, I told
10 him that if he were to take it, he should prepare himself for
11 his guideline to come in over the statutory maximum.  He
12 wanted more assurance that that would not be the case.  We
13 then got the revised plea offer, as I told you, which a plea
14 to the Indictment is not an offer.  Defendant can plead to an
15 Indictment at any time before there is a verdict.
16      THE COURT:  Correct.
17      I know you came into this case late, both of you
18 prosecutors, but I suggest that, perhaps, you get the minutes
19 of the prior proceedings because looking at this motion in
20 limine, you have a disclaimer in footnote 1 that you might
21 seek to make additional motions in limine concerning other
22 acts, evidence and other information that might become
23 available based on 3500 material disclosures.
24      I do not do motions piecemeal.
25      MR. MINDLIN:  I completely --

1    THE COURT:  And if you spoke to the prior prosecutor
2 on this case, a substantial amount of time has been wasted by
3 virtue of the Government's not making proper motions in limine
4 to begin with when they were supposed to be done.
5    So at this point this case was scheduled to go to
6 trial next month and I think substantial issues have been
7 raised here and I am not going to deprive the defendant the
8 right to challenge what, essentially, is a new charge.  He has
9 proceeded in this case with lack of knowledge and lack of
10 notice and with the assumption that the Government was not
11 going to proceed against him on a brandishing a firearm
12 charge.
13    MR. MINDLIN:  Your Honor, with respect to the motion
14 practice question, that is, of course, completely within Your
15 Honor's discretion and we recognize that, and the last thing
16 that we want is to waste Your Honor's time.
17    With respect to the new charge, as Ms. Philibert
18 said earlier, it is not based on new evidence in this case.
19 It is not based on anything --
20    THE COURT:  That is not the point.  That is not the
21 point.  We were ready to proceed to trial, basically, on two
22 charges and I drafted my jury charges accordingly.  And then
23 you decide to supercede just a few days before I am supposed
24 to post my jury charge, and that is why it has not been
25 posted.  So if I did not have notice, how can I expect the

Proceedings 15

1 defendant to have notice?
2          Fifteen months this case is pending without the
3 defendant having notice on the same evidence, on a case
4 brought by a more experienced prosecutor.  I find what has
5 been done here shameful and not worthy of your office.
6          We are going to need to scratch the trial date and
7 set a motion schedule.
8          Ms. London, we will reset the trial date once we
9 have resolved the motions.
10          And I suggest that the next time that you appear
11 here you come with a supervisor.
12          How much time will you need, Ms. London?
13          MS. LONDON:  Your Honor, I would ask for two weeks
14 to file the motion to dismiss the 924(c) count.  In order not
15 to duplicate motions, if there is a -- perhaps I should revise
16 that.  If there is a motion to be made based on an earlier
17 presentation to the grand jury, then I would also want to make
18 a motion to dismiss the Indictment on that.  I don't have any
19 documentation to back that up, but if the Government wishes to
20 provide the grand jury minutes and it does show that it was
21 already presented as to Mr. Thomas, then I would, obviously,
22 want to include that motion and not make piecemeal motions.
23          THE COURT:  Do you have a copy of the grand jury
24 minutes from the first presentation?
25          MS. PHILIBERT:  We don't have them with us today,

SAM     OCR     RMR     CRR     RPR

1    but we certainly do have access to them, Your Honor.
2             THE COURT:  Well, I would think that it being March
3    and trial being scheduled for April that that would be among
4    the 3500 material that you should be getting together.  So I
5    do not know what you mean by access.
6             MS. PHILIBERT:  Meaning I don't have them with me in
7    court today, but we certainly do have them in our files, have
8    the minutes in our files.
9             THE COURT:  In other words, you have a copy?
10            MS. PHILIBERT:  Yes, Your Honor.
11            MR. MINDLIN:  Correct.
12            THE COURT:  That would be the simplest way to say
13   it.
14            MS. PHILIBERT:  Understood.
15            THE COURT:  So you are to produce those grand jury
16   minutes to chambers for my inspection by 5 o'clock today.
17            MR. MINDLIN:  And just for clarity, Your Honor, are
18   you referring to the underlying Indictment or to the
19   superceder?
20            THE COURT:  Both of them.
21            MR. MINDLIN:  Thank you, Your Honor.
22            THE COURT:  I will make a determination as to
23   whether or not either or both of those minutes should be
24   disclosed to defense counsel.
25            MS. PHILIBERT:  Your Honor, given the timing of the

1  superseding Indictment and the time that it was presented
2  before the grand jury, I am not sure that we have the minutes
3  for the superceder.  We do have for the original presentation.
4         THE COURT:  Well, I want the original by close of
5  business today; and you have already had, this was filed --
6         MR. MINDLIN:  February 27th, Your Honor.
7         THE COURT:  So you have had two weeks already.  So
8  have the superseding Indictment grand jury minutes available
9  to me in chambers by close of business 5 o'clock Wednesday.
10        Ms. London, I will give you until April 3rd for your
11 motions, just because I do not know what is going to happen
12 once I inspect the grand jury minutes.
13        MS. LONDON:  Thank you, Your Honor.
14        THE COURT:  How much time for the Government's
15 reply?
16        MR. MINDLIN:  Your Honor, I do think for a moment,
17 so April 3rd is three weeks from now.  Would two weeks be
18 acceptable?
19        THE COURT:  Two weeks that is within the time of
20 Passover.  Passover begins sundown April 10th and ends sundown
21 April 18th.  I do not know if that affects either of you.
22        MR. MINDLIN:  It does affect me, Your Honor.
23        It would be helpful to have, I'm sorry, two weeks.
24 So just thinking out loud, two weeks from the 3rd would be to
25 the 17th, which is the Monday of that week.  If it would be

1  possible to go until the Friday of that week, that would be
2  helpful, but we can work around the Court's schedule.
3           THE COURT: Okay, April 21 for the Government's
4  response.
5           And how much time for your response, Ms. London?
6           MS. LONDON: One week, please, Your Honor.
7           THE COURT: April 28th.
8           (Pause.)
9           THE COURT: The Government has filed a motion in
10 limine and according to the schedule, let's see, defendant has
11 already replied and the Government's reply to defendant is due
12 tomorrow. So I am not going to change that schedule. I am
13 going to hold review of that in abeyance pending disposition
14 of the other motions.
15          Are the parties available Thursday, May 18th at
16 10 o'clock for either oral argument or for a status
17 conference? If I can decide the motions on papers, I will
18 have a decision before that.
19          MS. LONDON: At what time you said, I'm sorry?
20          THE COURT: 10 o'clock.
21          MS. LONDON: Yes, Your Honor.
22          MR. MINDLIN: Yes, Your Honor.
23          THE COURT: And time is excluded to May 18th due to
24 motion practice.
25          Is there anything else to raise today?

Proceedings 19

1  MS. PHILIBERT: Nothing further from the Government,
2 Your Honor.
3  MS. LONDON: No. Thank you, Your Honor.
4  THE COURT: All right, thank you.
5  Marshals, you may take charge.
6  (Matter adjourned.)

10           *    *    *    *    *

12 I certify that the foregoing is a correct transcript from the
  record of proceedings in the above-entitled matter.

14  /s/ Stacy A. Mace                    April 7, 2017
15     STACY A. MACE                     DATE

SAM     OCR     RMR     CRR     RPR