UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

        -against-

                                 (S-1) 16 Cr. 50 (DLI)

CHARLES THOMAS,

           Defendant.

------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHARLES THOMAS' MOTION TO DISMISS COUNT THREE OF SUPERSEDING INDICTMENT (S-1) 16 Cr 50 (DLI)


JOYCE C. LONDON, ESQ.
Joyce C. London, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
Tel: (212) 964-3700
Email: jlondonlaw@aol.com

*Attorney for Defendant*
*CHARLES THOMAS*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

    - v. -                             16-CR-50 (DLI)

CHARLES THOMAS,

                Defendant.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT THREE OF THE INDICTMENT

        Defendant Charles Thomas submits this memorandum of law in support of his motion to dismiss Count Three of the indictment, alleging that he aided and abetted the brandishing of a firearm in furtherance of a Hobbs Act robbery in violation of 18 U.S.C. § 924(c).

## I.    PRELIMINARY STATEMENT

        Count Three must be dismissed because (A) the grand jury was not presented with facts that could establish probable cause for an element of the brandishing offense – namely that Charles Thomas had sufficient advance foreknowledge that a firearm would be used during the robbery such that he could be held responsible for the 18 U.S.C. § 924(c) count; (B) the prosecution knowingly or recklessly failed to properly instruct the grand jury as to the standard for an 18 U.S.C. § 924(c) aiding and abetting violation – the only theory upon which Mr. Thomas could be held responsible, given the prior testimony to the first grand jury that co-defendant Adene Reid and an unapprehended individual were the only two people who had and/or discussed a weapon – which constitutes misconduct warranting dismissal of Count Three; and (C) even if the grand jury had been properly instructed and the facts presented could establish probable cause for aiding and abetting the brandishing of a firearm in furtherance of a

Hobbs Act robbery, because a Hobbs Act robbery is not categorically a crime of violence, Count Three must be dismissed.

## II.    FACTUAL BACKGROUND

On February 1, 2016 a grand jury seated in the Eastern District of New York indicted Charles Thomas and Adene Reid with conspiring to rob a cellular telephone store in Brooklyn on January 18, 2016 and with actually robbing that store on January 18, 2016. *See* 16-cr-50 (E.D.N.Y.) (DLI), Doc. No. 12, Filed 02/01/2016.  During the initial presentment of the case, the federal government had an agent from the Bureau of Alcohol Tobacco and Firearms ("ATF") testify and present exhibits showing that: Adene Reid and an unapprehended individual were in the cellular telephone store the evening of January 18, 2016; that one of the two store employees saw Mr. Reid "brandish" a firearm in the store and that the other employee heard Mr. Reid and the other individual discuss a gun; and that Charles Thomas was driving a getaway car. *See* Exhibit A to Declaration of Joyce C. London ("London Decl."), 02/01/2016 Grand Jury Minutes, pp. 9 – 17.  The agent testified that Mr. Thomas exited the getaway vehicle from the driver's side and ran from the law enforcement officers. *Id.*, p. 16.  During the proceedings, a grand juror asked if a gun was ever recovered or if it was seen on video and the agent answered that it was neither recovered nor seen on video. *Id.*, pp. 20, 22.  The only basis for the agent's stating that a gun was involved in the robbery were the interviews with the store employees, who said that one of the two robbers in the store – not Charles Thomas – had displayed it and discussed it with the other robber in the store – again, not Charles Thomas. *Id.*, p. 22.  Thereafter, the government read a proposed indictment that charged Mr. Thomas only with the Hobbs Act counts and charged Adene Reid as the only defendant responsible for the 18 U.S.C. § 924(c) violation. *Id.*, pp.25-26.. The prosecution's proposed indictment stated that Adene Reid

2

together with others, did knowingly and intentionally use and carry one or more firearms during together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said crimes of violence, one or more of which firearms was brandished.

*Id.*, p. 26. The prosecutor then cited 18 U.S.C. § 924(c)(1)(A)(i) and (ii) as well as 18 U.S.C. § 2, the aiding and abetting provision, though the proposed indictment read to the grand jury concerning the 18 U.S.C. § 924(c) count did not describe Adene Reid as aiding and abetting the firearm violation. *Id.* Ultimately, the grand jury indicted Adene Reid with a firearm brandishing charge and both Adene Reid and Charles Thomas with the two Hobbs Act charges. The government subsequently offered Adene Reid a plea agreement under the terms of which he would plead guilty to the Hobbs Act robbery and the government would dismiss the Hobbs Act conspiracy and 18 U.S.C. § 924(c) counts, but in which the parties agreed that his sentencing guidelines calculation would include an enhancement for brandishing a firearm during the robbery. *See* 16-cr-50 (E.D.N.Y.) (DLI), Doc. No. 61, Filed 04/27/17 (Government Sentencing Memo.) Prior to Adene Reid's sentencing, the government corrected the Probation Department's characterization of the offense conduct to clarify that only Adene Reid and the unapprehended co-conspirator had been in the cellular telephone store and that Charles Thomas's role was limited to being the getaway driver. *See* 16-cr-50 (E.D.N.Y.) (DLI), Doc. No. 45, Filed 02/13/17 (Government Letter). That is, the government consistently up until just over one month ago has taken the position that Adene Reid and an unknown co-conspirator were in the store, that only inside the store was a firearm discussed or brandished, that no firearm was ever recovered and that no video or photographs of a firearm exist.

Then, after failed plea discussions between Charles Thomas and the government, the parties filed pre-trial motions *in limine* and the Court set a jury selection date of April 17, 2017.

3

On February 27, 2017, more than a year after the first indictment and with trial less than six weeks away, the government, without warning, filed a superseding indictment that for the first time alleged that Mr. Thomas had any role in the firearm offense, charging him in Count Three of the superseding indictment with an 18 U.S.C. § 924(c) violation. *See* 16-cr-50 (E.D.N.Y.) (DLI), Doc. No. 51, Filed 02/27/2017. To obtain that superseding information, the government had the same ATF agent who testified in the 2016 grand jury appear at the 2017 grand jury. The prosecution began by asking if the agent was aware of Charles Thomas's criminal history, to which the agent responded by citing two prior cellular telephone store theft convictions, a "street shooting" and an "armed home invasion" robbery. *See* Exhibit B to London Decl., 02/27/2017 Grand Jury Minutes, p. 8. Thereafter, the agent proceeded to read to the grand jury the very same testimony the agent had provided a year earlier, excising only the 2016 grand jurors' questions – including the inquiry into what the basis was for saying a gun was involved in the robbery. *Id.*, pp. 10 – 23. The only additional information the agent offered was details of calls between telephones linked to Mr. Thomas and Mr. Reid, including calls on the day of the robbery. *Id.*, pp. 23 – 24. In response to a grand jury question about ownership of the getaway car and where in relation to that car Mr. Thomas had been apprehended, the agent explained that the vehicle that Mr. Thomas was purportedly driving had been rented to Mr. Thomas's uncle and that Mr. Thomas was restrained while running away from the car. *Id.*, p. 26. No evidence was presented that Mr. Thomas ever possessed a weapon in connection with the January 18, 2016 robbery, nor was there any evidence or testimony that Mr. Thomas knew or could reasonably have inferred that a firearm would be used.

After the agent's testimony, the prosecution read the indictment to the grand jury. As to Count Three, she read:

> On or about January 18, 2016, … Charles Thomas, together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said crimes of violence, one or more of which firearms was brandished.

*Id.*, p. 28. While the statutory provision for aiding and abetting liability, 18 U.S.C. § 2, is cited there, the prosecutor did not mention aiding and abetting until the end of the proceedings, at which time she stated that

> it is not necessary for the government to show that the defendant himself physically committed the crime with which he is charged in order for you to find him guilty. This is because, under the law, a person who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself. The defendant aided and abetted if he knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit a crime.

*Id.*, p. 33. The indictment that was returned cited 18 U.S.C. § 2 but, as with the language that the prosecution read to the jury in proposing the indictment and as with Adene Reid's earlier indictment on the same charge, it described Mr. Thomas's conduct only as a principal actor, not as an aider or abettor. This was so despite the fact that the only testimony before the grand jury was that either Adene Reid or the unapprehended individual possessed and/or discussed a weapon inside the store, that there was no evidence that Mr. Thomas had direct possession of a weapon at any time nor was there any testimony from which it could be inferred that he knew that a weapon would be used during the January 18, 2016 robbery. Indeed, despite the fact that nearly three years before the second grand jury proceeding the Supreme Court had declared, in *Rosemond v. United States*, 134 S.Ct. 1240 (2014), that aiding and abetting liability on an 18 U.S.C. § 924(c) count requires proof that a defendant have advance knowledge that a gun would be used in the predicate crime, the prosecution utterly failed to present any such proof to the

5

second grand jury nor did she advise the second grand jury that such proof was required for the commission of the crime. *Id.* at 1251 – 52.

Because there was no evidence from which the grand jury could consider, let alone determine probable cause, whether Mr. Thomas had advance knowledge of the weapon, Count Three must be dismissed. Additionally, because the law requiring proof of such advance knowledge was well-settled at the time of the grand jury proceedings, the prosecution's failure to instruct on that was so reckless (or intentional) as to constitute misconduct warranting dismissal of Count Three. Lastly, since the Hobbs Act robbery and robbery conspiracy that are the predicate acts for the Count Three charge categorically fail to constitute a crime of violence under the force clause in 18 U.S.C. § 924(c)(3)(A) and the residual (or "risk-of-force") clause in 18 U.S.C. § 924(c)(3)(B) render that provision unconstitutionally vague, Count Three must be dismissed on that basis, as well.

## III.    ARGUMENT

The Count Three 18 U.S.C. § 924(c) brandishing charge must be dismissed for three reasons. First, even if all of the facts the government presented to the grand jury were established by proof beyond a reasonable doubt, the evidence is insufficient to establish that Charles Thomas had the requisite advance knowledge – or, indeed, any knowledge – that a firearm would be used during the robbery. Secondly, the government's instruction to the grand jury either recklessly or intentionally ignored both the fact that Mr. Thomas was never in possession of a weapon and that the legal requirement that to be responsible as an aider and abettor of an 18 U.S.C. § 924(c) a defendant must have had advance knowledge that a weapon would be used, and that conduct is so egregious as to require dismissal of Count Three. Finally, even if the evidence could establish the requisite foreknowledge and the prosecution engaged in

6

no misconduct, because the Hobbs Act crimes charged in Counts One and Two are not crimes of violence for purposes of 18 U.S.C. § 924(c)(3)(A) or (B), Count Three must be dismissed.

## A. The Evidence is Insufficient as to Count Three

Where, as here, the evidence, even when considered in the light most favorable to the government, cannot establish the crime charged, an indictment can be dismissed upon a defendant's motion under Rule 12(b) of the Federal Rules of Criminal Procedure. *See United States v. Mennuti*, 639 F.2d 107 (2d Cir. 1981) (dismissing indictment for lack of subject matter jurisdiction), *abrogated on other grounds by Jones v. United States*, 529 U.S. 848 (2000); *see also United States v. Nitschke*, , 843 F. Supp. 2d 4 (D.D.C. 2011) (granting defendant's pretrial motion to dismiss indictment on sufficiency of the evidence grounds because the alleged conduct could not support a charge of attempted coercion and enticement of a minor to engage in sexual activity.)[1]

Under Section 924(c), it is a crime to brandish a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). The federal aiding and abetting statute punishes, as a principal, an individual that "aids, abets, counsels, commands, induces or procures" the

---

[1] The superseding indictment is further imperiled insofar as it is unclear from the text whether Mr. Thomas is being charged with actually brandishing the firearm or aiding and abetting its brandishing. While the indictment recites the aiding and abetting statute, the language or the charge does not allege that Mr. Thomas was an aider or abettor. Given the absence of textual language charging Mr. Thomas with being an aider or abettor, pursuit of such a charge would constitute constructive amendment of the indictment and would violate Mr. Thomas's rights under the Fifth and Sixth Amendments to the United States Constitution. *See United States v. Frank,* 156 F.3d 332, 337 (2d Cir.1998), *cert. denied,* 526 U.S. 1020, 119 S.Ct. 1257, 143 L.Ed.2d 353 (1999). Here, given that the government has relied on the same evidence to two separate grand juries to obtain the same charge against Mr. Thomas and Adene Reid, who had different roles in the offense, the indictment's failure to clearly identify how the government intends to proceed against Mr. Thomas – as a principal or as an aider or abettor – raises the same constitutional problems as a constructive amendment, leaving the defendant uncertain how to prepare his defense and how to attack the government's theory of the case. Mr. Thomas does not have adequate notice of what is the core of criminal behavior that the government will seek to prove at trial and Count Three must therefore be dismissed in its entirety.

commission of an underlying federal offense. 18 U.S.C. § 2. In *Rosemond,* the Supreme Court explained "what it takes to aid and abet a § 924(c) offense." 134 S.Ct. at 1245.  The Court noted that the aiding and abetting statute requires both an affirmative act furthering the underlying offense and an intent to facilitate that offense's commission. *Id.* The intent requirement is stricter than the facilitation requirement in that "the intent must go to the specific and entire crime charged—so here, to the full scope (predicate crime plus gun use) of § 924(c)." *Id.* at 1248.  The requisite prior knowledge "means knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 1249–50.  In other words, "[a] defendant manifests that greater intent, and incurs the greater liability of § 924(c), when he chooses to participate in a [violent crime] knowing it will involve a firearm; but he makes no such choice when that knowledge comes too late for him to be reasonably able to act upon it." *Id.* at 1251.  And, a defendant can reasonably walk away upon learning of a gun's use or planned use, so long as withdrawing would not "increase the risk of gun violence." *See id.*

The government, through more than 18 months of litigation, has never produced any evidence concerning Charles Thomas's intent to aid and abet the use of a firearm in the January 18, 2016 robbery.  Indeed, the only fact that the government appears to have presented to support the superseding indictment – the only difference between what facts were used to obtain two Hobbs Act charges and what facts were used to obtain the two Hobbs Act charges as well as the gun charge – was the defendant's prior criminal history.  But that prior criminal history was wholly unrelated to the offense conduct here.  It was not alleged to have been part of a conspiracy or any interrelated acts.  Additionally, the crimes involving firearms that the agent testified about took place five years before the instant offense and the convictions appear not to have been for firearm offenses. *See* 16-cr-50 (E.D.N.Y.) (DLI), Doc. No. 48, Filed 02/21/2017

8

(Government Motion *in Limine at 4*) (cases allegedly involving firearms, describing pleas to robbery in the third degree under New York Penal Law § 160.05, the elements of which are that "A person … forcibly steals property" and attempted assault in the second degree under New York Penal Law § 120.05, with no description of which subsection he admitted to violating), p. 4. That Mr. Thomas had, years earlier in an unrelated case, been charged with – but not convicted of – using a firearm or committing a crime with an armed co-conspirator could not show that he probably had known prior to his accomplices entering the cellular telephone store – or ever – that one of them would be using a firearm in furtherance of the January 18, 2016 robbery. *See United States v. Navarro-Vargas*, 408 F.3d 1184, 1187 (9th Cir. 2005) (in describing grand jury charge based on the model charge recommended by the Judicial Conference of the United States, quoting probable cause instruction to grand jurors as determining whether "the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.") That half a decade earlier Charles Thomas had been charged – though, it appears, not convicted of – using a firearm and/or being with another person who had used a firearm and that Charles Thomas and Adene Reid had communicated by telephone the day of the robbery offered the grand jury no evidence that Charles Thomas knew that a robbery co-conspirator would brandish a firearm. Absent any such evidence, the indictment must be dismissed as insufficient.

As a final matter, while intent may ordinarily be the sort of issue that would be left to the jury where, as here, the government failed to introduce any evidence supporting an inference that the defendant had the necessary intent to aid and abet a § 924(c) offense, the indictment is insufficient as a matter of law and must be dismissed. *See United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992) (affirming district court's pretrial dismissal of indictment where court

determined that, based on undisputed facts, government could not prove defendant's intent as a matter of law.)  While an indictment need only contain those facts and elements of the alleged offense necessary to inform the accused of the charge, if an essential element of the offense is omitted from the indictment, it cannot, consistent with the principle underlying the Fifth Amendment requirement that prosecution for an infamous crime be instituted by a grand jury, be supplied by the prosecutor or by the courts. As the Supreme Court stated in *Russell v. United States*, 369 U.S. 749, 770 (1962):

> To allow the prosecution, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

This is so even if the omitted information is not a statutory element of the crime.  In *United States v. Outler*, 659 F.2d 1306 (5th Cir. 1981), for example, it was fatal to an indictment charging a physician with prescribing drugs in violation of 21 U.S.C. § 841 (a) not to allege that the prescriptions lacked legitimate medical reasons as an element of the offense.  Though this factor was not a statutory element of the violation, the Fifth Amendment did not allow the Court to speculate whether the grand jury had considered this omitted element in determining whether there was probable cause for the indictment. *See also United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (indictment charging defendant with mailing videotape of himself masturbating to undercover postal inspector was insufficient because it failed to allege essential element of offense that tape was obscene).

Where, as here the grand jury was presented with no information about the requisite advance foreknowledge concerning the use of a firearm in the January 18, 2016 robbery that

Charles Thomas must have possessed in order to support the charge of aiding and abetting an 18 U.S.C. § 924(c) violation, the indictment is insufficient as a matter of law and must be dismissed.

**B.   The Government's Knowing or Reckless Failure to Properly Instruct the Grand Jury as to the Standard for an 18 U.S.C. 924(c) Violation Constitutes Prosecutorial MisconductProsecutorial Misconduct**

Not only is the indictment insufficient, but it was procured through reckless and/or intentional prosecutorial misconduct.  The government has charged two individuals with the same act – asking two different grand juries to indict two different people, presenting a proposed indictment in which each was alleged to have been a principal actor and not asking the grand jury to clarify whether either was indicted as an aider and abettor or as a principal.  Even more egregious, however, was the government's erroneous instruction to the grand jury regarding aiding and abetting liability, which was clearly incorrect in light of well-established Supreme Court case law set forth in *Rosemond v. United States* three years prior to the second grand jury proceedings.

While the Supreme Court has held that a federal indictment is presumptively valid, *See Costello v. United States*, 350 U.S. 359, 363 (1956), federal courts possess an inherent supervisory power allowing them to establish and maintain civilized standards of procedure and evidence. *See United States v. Hasting*, 461 U.S. 499, 505 (1983); *McNabb v. United States*, 318 U.S. 332, 340-41 (1943).  This power enables courts to dismiss indictments when they find prosecutorial misconduct to have occurred during grand jury proceedings. *See, e.g.., United States v. Mechanik*, 475 U.S. 66, 83 (1986) (Marshall, J., dissenting); *United States v. Adamo*, 742 F.2d 927, 942 (6th Cir. 1984), *cert. denied,* 469 U.S. 1193 (1985); *United States v. Mitchell*, 572 F. Supp. 709, 713 (N.D. Cal. 1983), *aff'd,* 736 F.2d 1299 (9th Cir. 1984), *cert. denied,* 474

11

U.S. 830 (1985).  In the Second Circuit, a defendant need not have been prejudiced to justify dismissal of an indictment on the basis of prosecutorial misconduct – the court's "supervisory power, to prevent prosecutorial impairment of the grand jury's independent role" is its own justification for dismissal. *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (dismissing indictment with no showing of actual prejudice).

Both grand jury proceedings here rested entirely on testimony and exhibits introduced by an ATF agent who had not been present during the robbery itself.  While hearsay evidence can be used to procure an indictment, "extensive reliance on hearsay testimony is disfavored.  More particularly, the government prosecutor, in presenting hearsay evidence to the grand jury, must not deceive the jurors as to the quality of the testimony they hear." *Id.* (observing that "[h]eavy reliance on secondary evidence is disfavored precisely because it is not first-rate proof" and citing American Bar Association's *Standard for Criminal Justice* Commentary to Standard 3-3.6 (2d Ed. 1980) in support).  Here, the first grand jury had specific questions about how the investigators knew there was a weapon and instead of having the employee witnesses testify as to what they saw and the admission made by the individuals in the store, the government relied on the hearsay testimony of the ATF agent, which, by virtue of the agent's status as a federal law enforcement agent, likely added an undeserved aura of enhanced credibility to the testimony, given that the agent had no first-hand observations relating to the firearm.

Further, though it is possible that the testimony concerning Mr. Thomas's prior crimes was intended to establish that having been accused of being in contact with a firearm years before, he probably knew that his co-conspirators would use a gun during the January 18, 2016 robbery, that evidence surely served just as much to inform the grand jurors that Mr. Thomas was an unrepentant armed robber who should be indicted as a matter of equity. *See id.* ("the

impartiality and independent nature of the grand jury process was seriously impaired" when the government attorney described defendant as "a real hoodlum" and added "numerous speculative references to other crimes of which [the defendant] was 'suspected'" though none was under investigation by the grand jury.) The testimony the government elicited about Mr. Thomas appears to have been made "in order to depict [defendant] as [a] bad person[] and thereby obtain an indictment for independent crimes. This tactic is 'fundamentally unfair.'" *United States v. Ciambrone,* 601 F.2d 616, 623 (2d Cir.1979) (prosecutor may not mislead grand jury or engage in fundamentally unfair tactics before it).

An additional problem with the second grand jury proceedings here is the fact that the prosecutor knew or should have known at the time that she presented evidence that under *Rosemond,* to sustain a charge of aiding and abetting the brandishing of a firearm, there would need to be proof that Charles Thomas had advance foreknowledge that a gun would be used during the January 18, 2016 robbery. Not only was no evidence supporting that requirement presented to the grand jury, but they also were not instructed as to the requirement itself. Rather, the prosecutor allowed them to be misled into believing that by virtue of his role as the getaway driver – the very theory the government presented in the course of Adene Reid's prosecution – he was legally responsible for the 18 U.S.C. § 924(c) charge. The prosecution wholly misrepresented the standard for 18 U.S.C. § 924(c) aiding and abetting when she instructed the grand jury that Charles Thomas "aided and abetted if he knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit a crime." Exh. B, London Decl., p. 33. As the Second Circuit held in a post-*Rosemond* case (in a decision published more than a year prior to the second grand jury proceeding), this sort of "blanket aiding and abetting instruction requiring intent to commit the crime" does not "cure the

13

failure" of omitting the requirement that the "defendant[] had advance knowledge of the firearm." *United States v. Prado*, 815 F.3d 29, 98 (2d Cir. 2016).  While *Rosemond* and *Prado* addressed erroneous jury instructions, the underlying principle is the same – what must be established, whether by probable cause for an indictment or by proof beyond a reasonable doubt for a conviction, in an 18 U.S.C. § 924(c) aiding and abetting charge.  The answer is clear – evidence that the defendant had advance knowledge of the firearm.  There was no such evidence here.  Perhaps recognizing that, the prosecution opted to instruct the grand jurors with a lesser standard.  This was either intentional misconduct or inexcusable recklessness.  Prosecutors, "by virtue of their position, have gained such influence over grand juries that these bodies' historic independence has been eroded." *Hogan*, 712 F.2d at 759.  But this "gain in prosecutors' influence over grand juries is all the more reason to insist that" the limitations on the prosecution "be observed strictly." *Id.*  Where, as here, the grand jury's role as a "shield, standing between the accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecution" has been impaired by a prosecutor's conduct, the court should exercise its supervisory powers and dismiss the indictment.[2]

### C. Hobbs Act Robbery Crimes Are Not Crimes of Violence Under 18 U.S.C. § 924(c)(3)(A) or (B)

Should this Court not dismiss on the basis of insufficiency or prosecutorial misconduct, Count Three must nevertheless be dismissed, as the Hobbs Act crimes charged as predicate acts for purposes of the 18 U.S.C. § 924(c) count do not qualify as crimes of violence.

The Hobbs Act statute provides, in pertinent part, that:

---

[2] The prosecution's direction to the jury, telling them "I submit that you have heard testimony establishing the crimes charged in this proposed indictment," (Exh. B, London Decl., pp. 33 – 34) is further proof that the goal here was not to allow the grand jury to investigate independently and conclude if there was a basis to proceed against Mr. Thomas but, rather, to obtain an indictment for the firearm charge.

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so ... shall be fined under this title or imprisoned for more than twenty years, or both.

(b)(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining ...

Unlike the general conspiracy statute, 18 U.S.C. § 371, where the essential elements include a requirement that the conspirators "do any act to effect the object of the conspiracy," the statutory definition of a Hobbs Act conspiracy does not include the commission of an overt act as an element of the crime.

Section 924(c)(1)(A), provides, in pertinent part, that:

[A]ny person who, during and in relation to a **crime of violence** ... uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence [face enhanced punishment.]

(emphasis added.)

Under § 924(c)(3), a "crime of violence" is defined as:

an offense that is a felony and—

(A)  has as an element the **use, attempted use, or threatened use of physical force against the person or property of another** [the "force clause"], or

(B)   that **by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense** [the "residual" or "risk-of-force" clause]

(emphasis added.)

15

The Second Circuit recently addressed the argument that a Hobbs Act robbery is not categorically a crime of violence under the force clause and that the residual clause is unconstitutionally vague in *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016). Though the Court ruled against the defendant in *Hill*, a petition for rehearing and rehearing *en banc* in that case, submitted on September 16, 2016, is still pending. *See United States v. Hill*, 14-3872 (2d Cir.), Doc. No. 127, Filed 09/16/2016. Further, the very issue raised in *Hill* concerning the constitutionality of the residual/risk-of-force clause was briefed and argued before the Supreme Court in the October Term 2016 and has now been put over for reargument in the October Term 2017. *Sessions v. Dimaya*, 137 S.Ct. 31 (2016) (granting *certiorari*), on June 26, 2017 restored to calendar for reargument. The questions concerning the definition of a crime of violence and whether a Hobbs Act robbery or conspiracy would qualify as one remain unsettled, and Mr. Thomas therefore moves to dismiss Count Three.

As to the force clause argument, the Supreme Court has not yet ruled whether a Hobbs Act robbery or robbery conspiracy categorically has as an element the use, attempted use or threatened use of physical force against the person or property of another, as required by 18 U.S.C. § 924(c)(3)(A). While the Second Circuit ruled that a completed Hobbs Act robbery satisfies the force clause in *Hill*, it has not addressed this question with respect to a robbery conspiracy following the Supreme Court's line of decisions undergoing a similar analysis in the context of the Armed Career Criminal Act. *See Johnson v. United States,* 559 U.S. 133, 140 (2010) ("*Johnson* (2010)"); *United States v. Castleman*, 134 S. Ct. 1405 (2014). Further, lower courts have ruled that Hobbs Act robbery and robbery conspiracy do not categorically constitute a crime of violence for purposes of the force clause.

16

Regarding the constitutional challenge to the residual clause, on January 17, 2017, the Supreme Court heard arguments in the case of *Sessions v. Dimaya* to determine whether the definition of "crime of violence" in the residual clause of 18 U.S.C. § 16(b), which is identical to the language in Section 924(c)(3)(B), was unconstitutionally vague. *See Lynch v. Dimaya*, 15-1498, argued 01/17/2017.  As noted above, that case was calendared for reargument in October Term 2017.  If the Supreme Court invalidates Section 16(b)'s residual clause as unduly vague, it is hard to imagine any argument for the continuing validity of Section 924(c)(3)(B).

Because the Supreme Court has not definitively determined whether a Hobbs Act robbery crime categorically qualifies as a crime of violence under the 18 U.S.C. § 924(c)(3)(A) force clause or whether the § 924(c)(3)(B) residual clause is unduly vague, Mr. Thomas hereby moves this Court to dismiss Count Three, as the predicate Hobbs Act robbery and conspiracy offenses as defined by 18 U.S.C. §1951 do not qualify as "crimes of violence" for purposes of either the force clause or the residual clause of 18 U.S.C. § 924(c) as a matter of law.

### i.   The Hobbs Act Robbery Crimes Are Not "Categorically" Crimes of Violence

As an initial matter, to determine whether a Hobbs Act robbery crime qualifies as a "crime of violence" under Section 924(c), courts must use the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Acosta*, 470 F.3d 132, 135 (2nd Cir. 2006).  Under the categorical approach, courts may "look only to the statutory definitions—i.e., the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Acosta*, 470 F.3d at 135.  Employing the categorical approach, a predicate offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165,

167 (4th Cir. 2012).  If the most minimal conduct penalized by a statute does not constitute a "crime of violence," then the entire statute categorically fails to qualify as a "crime of violence."

The relevant portion of 18 U.S.C. § 924(c) defining a "crime of violence" has two clauses: Section 924(c)(3)(A), the "force clause" and section 924(c)(3)(B), the "residual" (or, as the Second Circuit named it in *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016), the "risk-of-force" clause.)  A Hobbs Act robbery or conspiracy under 18 U.S.C. § 1951, which constitutes the predicate "crime of violence" in the indictment in this case, categorically fail to satisfy the force clause because those crimes do not require a defendant to commit an overt act or make an intentional threat of force.  Further, under *Johnson v. United States*, 135 S.Ct. 2551 (2015) ("*Johnson* (2015)"), the residual clause is unconstitutionally vague and cannot sustain a conviction. Therefore, Count Three of the indictment must be dismissed.

### ii.    Hobbs Act Robbery and Robbery Conspiracy Do Not Qualify as "Crimes of Violence" for Purposes of the Force Clause of 18 U.S.C. § 924(c)(3) as Either Crime Can Be Violated Without (1) the Use, Attempted Use or Threatened Use of *Violent Physical Force* or (2) an *Intentional* Threat of the Same

For a Hobbs Act robbery crime under 18 U.S.C. § 1951 to qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)'s force clause, the offense must have as a statutory element "physical force."  As the Supreme Court held in the context of the ACCA, "physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson* (2010) , 559 U.S. at 140 (emphasis in original).  Indeed, "the word 'violent' or 'violence' standing alone 'connotes a substantial degree of force.'" *Castleman*, 134 S. Ct. at 1411 (quoting *Johnson* (2010), 559 U.S. at 140) (finding even a small amount of force suffices to establish that a domestic crime is a crime of violence); *see also United States v. Rico-Mejia*, --- F.3d ---, 2017 WL 568331, No. 16-500222 (5th Cir. Feb. 10, 2017) (*Castleman*'s less rigorous test is "not applicable to the physical force requirement

18

for a crime of violence, which 'suggests a category of violent, active crimes,' that have as an

element a heightened form of physical force that is narrower in scope than that applicable in

the domestic violence context.") (quoting *Castleman*,134 S. Ct. at 1411 n.4).

Neither a Hobbs Act robbery conspiracy nor a Hobbs Act robbery meets this requirement.

A Hobbs Act robbery can be accomplished by putting someone in fear of future injury to his

person or property, which does not require the attempt to use or threaten to use "violent force"

and a Hobbs Act conspiracy can be accomplished by mere agreement without any overt act.

Additionally, because the act of attempting or conspiring to put someone in fear of injury

can accomplished without an intentional threat of physical force, the Hobbs Act crimes charged

here fail to satisfy the *mens rea* requirement of the 18 U.S.C. § 924(c)(3)(A) force clause.

### (a) The Act of Attempting to Put Someone In Fear of Injury Does Not Require "Violent Force"

The plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides

that the offense can be accomplished by the act of placing another in "fear of injury, immediate

or future, to his person or property." The statute does not require that such fear be the result of

an act of force. Conduct falling within the Hobbs Act statute, then, could be the use of "fear"

and could include acts that cause a person anxiety, concern, or worry that his or her property

could be injured.

"The concept of 'property' under the Hobbs Act is an expansive one" and includes

"*intangible assets*, such as rights to solicit customers and to conduct a lawful business." *United*

*States v. Arena*, 180 F.3d 380, 391 (2d Cir. 1999) (emphasis added), *abrogated in part on other*

*grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003). Thus, Hobbs Act

robbery can be committed by threats to cause a devaluation of some economic interest like a

19

stock holding or to lower the value of one's real property by erecting a garish display next to it. Such threats to economic interests are not threats of physical force and under the categorical approach, because conduct within the Hobbs Act robbery statute falls outside the force clause, 18 U.S.C. § 1951(b) cannot satisfy the "crime of violence" element of a § 924(c) crime.

Though the word "force" appears in the Hobbs Act statute, the term as courts have understood it in the Hobbs Act context does not satisfy the requirement in 18 U.S.C. § 924(c)(3)(A). In the Hobbs Act statute, the unlawful taking of property against a person's will can be accomplished "by means of actual or threatened force." 18 U.S.C. § 1951(b)(1). Under the categorical approach, only if all conduct falling within the definition of "actual or threatened force" in the Hobbs Act (as well as all other conduct, such as "fear of injury" to person or property) constitutes "physical force" as required by the force clause can the statute serve as a Section 924(c) predicate. But "actual or threatened force" does not necessarily mean "physical force," and thus the Hobbs Act fails as a predicate for Count Three on this basis.

As the Second Circuit has explained in connection with the force clause of 18 U.S.C. § 16, "a provision which contains virtually identical language to § 924(c)(3)" (*Acosta*, 470 F.3d at 134), "there is a difference between causation of an injury and an injury's causation by the use of physical force." *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003) (concluding that Connecticut statute requiring state to prove that defendant intentionally caused physical injury did not constitute crime of violence because "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission.") That is, an offense with an element of causing physical injury does not necessarily require the use of "violent force" and thus does not constitute a crime of violence. *Id.; see also Torres-Miguel*, 701 F.3d at 168 ("of course, a crime may *result* in death or serious

injury without involving *use* of physical force") (emphasis in original.)  If, as in *Chrzanoski*,

causing physical injury does not satisfy the physical force element, surely neither can the mere

threat of physical injury, as penalized by the Hobbs Act statute, satisfy that requirement.  Indeed,

several courts have noted the variety of ways in which a defendant could place another person in

fear of injury without using force.  "For example, as the Fifth Circuit has noted, a defendant can

violate statutes like § 422(a) by threatening to poison another, which involves no use or

threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-

Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)); *see also United States v. Perez-Vargas*, 414 F.3d

1282, 1286 (10th Cir. 2005) ("several examples [exist] of third degree assault that would not use

or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing

an accident, or intentionally exposing someone to hazardous chemicals.")

     Indeed, in *United States v. Kornegay*, 2016 WL 877950, a Hobbs Act count was

sustained following a sufficiency of the evidence challenge to the force element in a case

involving the theft of cell phones from stores on the basis of the testimony of an assistant store

manager that one of the robbers "scream[ed] abruptly 'F' them. They are not doing anything.

Take what you want," that "one of [the store] representatives tried to lock the door and with

force [the assailants] were able to actually push the door open" and that the robbers "also carried

tools to cut the phones from their wiring." *Id.*, at *2.  That is, under *Kornegay*, a verbal insult

accompanied by the force necessary to push open a door is legally sufficient to sustain a Hobbs

Act conviction, despite the lack of any evidence that the victims were put in fear of injury.

     Because the full range of conduct covered by the Hobbs Act robbery statute does not

require the sort of "force" against persons or property required by 18 U.S.C. § 924(c)(3)(A), the

Hobbs Act robbery attempt and conspiracy charged in this case cannot qualify as "crimes of violence" for purposes of Count Three.

> **(b) Under the § 924(c)(3)(A) Force Clause, "Physical Force" Must be Intentional, While the Hobbs Act "Fear of Injury" Can Be Satisfied Without Intentional Conduct**

The language of 18 U.S.C. § 924(c)(3)(A) implicates only intentional conduct insofar as it requires proof of the "use" of force (or attempts or threats to "use" force) but that intentionality requirement is absent in the statutory definition of a Hobbs Act robbery. For this reason, as well, the Hobbs Act crimes fail as a predicate offense for purposes of 18 U.S.C. § 924(c).

As the Supreme Court has held when interpreting the phrase "to use" as it appears in 18 U.S.C. § 16(a), to "use" means to "require[] active employment" and "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). That is, the verb "use", has been held to "contemplate[] only *intentional* conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will *intentionally* employ physical force." *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003), (considering the term "use" in 18 U.SC. § 16's residual clause) (internal quotation marks omitted) Thus, the Second Circuit held in *Dalton v. Ashcroft* that driving while intoxicated could not constitute a "crime of violence under § 16 because it involved "speeding, crashing, harming others and/or possessing an out-of-control car," none of which constituted sufficiently intentional conduct. 257 F.3d 200, 206 (2d Cir. 2001). To elevate such conduct to the "use" of force, the Second Circuit explained, would "equate[] 'physical force' with an accident," and "[a]lthough an accident may properly be said to involve force, one cannot be said to *use* force in an accident as one might use force to pry open a heavy, jammed door." *Id.* (emphasis in original). Accordingly, a crime of violence under the force clause requires the *intentional* use of physical force.

The "fear of injury" element under the Hobbs Act robbery statute, by contrast, does not

require a defendant to intentionally place another in fear of injury.  Therefore, it is missing the intentional *mens rea* element that is necessary under the Second Circuit's precedent.[3]  This, too, renders a Hobbs Act robbery insufficient as a "crime of violence" under the § 924(c)(3)(A) force clause.

### (c) Conspiring to Commit a Hobbs Act Robbery Does Not Require the Use, Attempted Use or Threatened Use of Violent Force

To establish a Hobbs Act conspiracy, the government need not prove any overt act. *See United States v. Clemente*, 22 F.3d 477, 480 (2d Cir. 1994) (explaining that in Hobbs Act extortion case, though the "substantive offense requires proof of (1) interference with commerce and (2) extortion" the "conspiracy charge does not carry those same requirements" and, further, "'[f]actual impossibility' is no defense to the inchoate offense of conspiracy under the Hobbs Act.")  That is, unlike a conspiracy charged under 18 U.S.C. § 371, under which a person can be guilty of criminal conspiracy for reaching an agreement with another when "one or more of" those people who reached the agreement "do any act to effect the object of the conspiracy," a Hobbs Act conspiracy requires only an agreement, and no over act.

---

[3] Cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) provide an analog when considering whether a Hobbs Act threat must be "intentional." Federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm – the same action required under the Hobbs Act robbery statute's "fear of injury" provision. *See United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts."); *see also United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir 2005) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same). The bank robbery statute's intimidation element, just like the Hobbs Act fear of injury element, does not have a *mens rea* requirement. Thus, as with "intimidation" under the bank robbery statute, fear of injury can be satisfied "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36); *Kelley*, 412 F.3d at 1244 ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating.").

Prior to *Johnson* (2015), circuits were split over whether a conspiracy crime, generally, could qualify as a crime of violence under the residual clause. *Compare United States v. Chandler*, 743 F.3d 648, 661-61 (9th Cir. 2014) (in classifying Nevada state law robbery conspiracy as a crime of violence, relying on *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993), in which Ninth Circuit held Hobbs Act conspiracy was crime of violence under residual clause, but did not address force clause); *United States v. White*, 571 F.3d 365, 371 (4th Cir. 2009) (state law conspiracy to commit robbery presented "a degree of risk … similar to that presented by the enumerated offenses" and thus a crime of violence under the residual clause of the ACCA); *United States v. Hawkins*, 139 F.3d 29, 34 (1st Cir.1998) (conspiracy to commit armed robbery a violent felony under the ACCA because "[w]e have also unequivocally held that conspiracy to commit a crime of violence ... is itself a crime of violence"); *United States v. Preston*, 910 F.2d 81, 87 (3d Cir.1990) ("Since [the defendant] was convicted of conspiracy to commit a violent felony, the use or threat of physical force was a part of his prior conviction for this crime.") *with United States v. Fell*, 511 F.3d 1035, 1039–41 (10th Cir.2007) (Colorado conviction for conspiracy to commit second-degree burglary was not a violent felony for purposes of ACCA because it did not "present a risk of violent confrontation comparable to the risk inherent in a completed burglary.")  In light of *Johnson* (2015), however, those cases categorizing Hobbs Act conspiracies as violent crimes under the residual clause have no persuasive force. *See, e.g., United States v. Chandler*, 135 S.Ct. 2926 (2015) (vacating judgment in light of *Johnson* (2105)).  Accordingly, a Hobbs Act conspiracy – like a Hobbs Act robbery – must satisfy the force clause of Section 924(c)(3)(A).

The elements of a Hobbs Act robbery conspiracy are simply that a defendant "conspires" to "commit[] or threaten[] physical violence to any person or property in furtherance of a plan or

purpose" to unlawfully take the personal property from another. 18 U.S.C. § 1951(a). That

contains no overt act requirement. Because a Hobbs Act conspiracy can be accomplished

without an act – even without a threat – it does not have as an element the use, attempted use, or

threatened use of physical force. *See United States v. Castillo*, 15-cr-205 (D.N.M.),

Memorandum Opinion and Order of May 2, 2016 (ECF Doc. No. 313) (concluding that Hobbs

Act conspiracy does not constitute a crime of violence for purposes of Section 924(c)(3)); *United*

*States v. Edmundson*, __ F.Supp.3d __, 2015 WL 9582736 (D. Md. Dec. 30, 2015) (Hobbs Act

conspiracy not a crime of violence under the force clause because it does not require the

defendant to commit an overt act in furtherance of the conspiracy); *see also United States v.*

*Gore*, 636 F.3d 728, 729-30 (5th Cir. 2011) (conspiracy to commit aggravated felony under

Texas law did not come within the definition of "violent felony" under the force clause of the

ACCA); *United States v. King*, 979 F.2d 801, 801-03 (10th Cir. 1992) (because New Mexico's

conspiracy offense did not require an overt act it did not have "as an element the use, attempted

use, or threatened use of physical force against the person of another it was not a crime of

violence under ACCA); *United States v. Ledbetter*, 2016 WL 3180872, * 6 – 7 (S.D.Ohio June 8,

2016) (concluding that Hobbs Act conspiracy is not a crime of violence under the force clause

but is a crime of violence under the residual clause, despite *Johnson* (2015)). In this case,

therefore, Count Three cannot be sustained on the basis of the alleged commission of the Hobbs

Act conspiracy charged in Count One.

### ii.   The Residual Clause in 18 U.S.C. § 924(c)(3)(B) is Unconstitutionally Vague

Neither a Hobbs Act robbery nor a Hobbs Act robbery conspiracy can qualify as a "crime

of violence" under the 18 U.S.C. § 924(c)(3)(B) residual clause. In *Johnson* (2015), the Supreme

Court decided ACCA's "residual clause" was unconstitutionally vague. The reasoning in

*Johnson* (2015) applies equally to the "crime of violence" definition in 18 U.S.C. § 924(c)(3)'s residual clause, which suffers from the same flaws as the ACCA residual clause.  Using 18 U.S.C. § 924(c)(3)(B) to categorize predicate conduct as a "crime of violence" would therefore violate due process.[4]

The Armed Career Criminal Act's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), covered any felony that "involves conduct that presents a serious potential risk of physical injury to another."  In *Johnson* (2015), the Supreme Court held that the ACCA residual clause was unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging" and "indeterminate."  135 S. Ct. at 2557.  As a result, the ACCA "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id*. The Supreme Court concluded that its four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had ultimately failed and could the residual clause could not be constitutionally applied. *Id*. at 2558-59.

The Court began its analysis by explaining that, under *Taylor v. United States*, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony. *Johnson*, 135 S.Ct. at 2557.  Courts had to assess whether a crime qualified as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." *Johnson*, 135 S.Ct. at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).  This "require[d] a court to picture the kind of conduct that the crime involve[d] 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." *Johnson*, 135 S.Ct. at 2557 (citation

---

[4] As discussed above, though the Second Circuit ruled that the 18 U.S.C. § 924(c)(3)(B) residual clause was still in effect notwithstanding *Johnson* (2015), it has not yet acted on the pending petition for rehearing and rehearing *en banc*. This question will likely end up being settled next year when the Supreme Court decides *Dimaya*.

26

omitted). The Court linked the "ordinary case" framework to *James v. United States*, 550 U.S. 192 (2007). There, the Supreme Court had held that

> We do not view [the ordinary case] approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . . Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.

*James*, 550 U.S. at 208 (citations omitted). "As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause." *Id.* at 209 (emphasis added, brackets supplied).

The *Johnson* (2015) Court, however, concluded that the process of determining what is embodied in the "ordinary case" left "[g]rave uncertainty" surrounding the method of "determin[ing] the risk posed by the "judicially imagined 'ordinary case.'" *Johnson*, 135 S. Ct. at 2557. "The residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. The Court then considered and rejected different ways that one might envision the hypothetical "ordinary case." Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," *Johnson* concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." *Id.* at 2559 (referring to *Chambers v. United States*, 555 U.S. 122 (2009) and *Sykes v. United States*, 564 U.S. 1 (2011)).

This flaw alone established the residual clause's unconstitutional vagueness. The *Johnson* (2015) Court, however, explained that a closely related infirmity further exacerbated the

problem.  The Court noted that the residual clause lack[ed] a meaningful gauge for determining

when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute

a "serious potential risk of physical injury." *Johnson*, 135 S.Ct. at 2558.  Although the level of

risk required under the residual clause must be similar to the ACCA enumerated offenses

(burglary, arson, extortion, or crimes involving use of explosives), *Johnson* (2015) rejected the

notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated

offenses could cure the constitutional problem.  *Id.*

The enumerated offenses failed to save the ACCA residual clause because, according to

the majority, comparing felonies to enumerated offenses similarly requires resorting to "a

judicially imagined abstraction." *Id.*  Before courts may even start the comparison, they must

first determine what the "ordinary" enumerated crime entails.  But the "ordinary" enumerated

crimes, *Johnson* (2015) emphasized, like any other crimes, "are far from clear in respect to the

degree of risk each poses." *Id.* (quoting *Begay*, 553 U.S. at 143).  Any attempt to figure out the

"ordinary" enumerated offense would require just as much guesswork as figuring out the

"ordinary" predicate offense.  The Court held that such indeterminacy, unpredictability, and

arbitrariness inherent in the "ordinary case" analysis is more than the "Due Process Clause

tolerates." *Johnson*, 135 S.Ct. 2558.

Thus, *Johnson* (2015) not only invalidated the ACCA residual clause, but it invalidated

the "ordinary case" analysis and statutory provisions that compel such an analytical framework.

Because the "ordinary case" analysis is impossible to apply in a constitutional manner.  "By

combining indeterminacy about how to measure the risk posed by a crime with indeterminacy

about how much risk it takes for the crime to qualify as a violent felony," *Johnson* (2015)

concluded, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

The residual clause found at 18 U.S.C. § 924(c)(3)(B) suffers from the same constitutionally fatal flaws. Its reach would embrace any felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Under the categorical approach, the first problem identified by *Johnson* (2015) is equally present in an analysis of Section 924(c)(3)(B) – the indeterminacy of what is the "ordinary case" of a Hobbs Act robbery or robbery conspiracy and how to estimate the risk of such an "ordinary" case to determine whether "physical force against the person or property of another" will be used. Likewise, "how much risk it takes" to deem a predicate offense a "crime of violence" is equally uncertain and thus presents the same due process problems that caused the Supreme Court to strike the ACCA residual clause. *Johnson* (2015), 135 S.Ct. at 2558. Just as the *Johnson* (2015) Court found it impossible to intelligibly apply the ACCA's "imprecise 'serious potential risk' standard to … a judge-imagined abstraction," so is it impossible to do so for the 18 U.S.C. § 924(c)(3)(B) "substantial risk" standard. *Id.*

Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c)(3)(B) is a risk that force will be used, this difference is immaterial to the due process problem. The Court's holding in *Johnson* (2015) did not turn on the type of risk – whether of injury or of the use of force – but rather how a court assesses and quantifies the risk, which is the same inquiry whether employed while analyzing the ACCA or Section 924(c)(3)(A). Both statutes require courts first to picture the "ordinary case" embodied by a felony using a categorical approach, and then decide if it qualifies as a crime of violence by assessing the risk

posed by the "ordinary case." *See, e.g., United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d

Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d

1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *Acosta*,

470 F.3d at 134;*United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995).

The difference in language between "serious potential risk" and "substantial risk," is thus

of no moment in this analysis, as the "residual clause failed not because it adopted a 'serious

potential risk' standard but because applying that standard under the categorical approach

required courts to assess the hypothetical risk posed by an abstract generic version of the

offense. . . . [T]he 'indeterminacy of the wide-ranging inquiry' made the residual clause more

unpredictable and arbitrary in its application than the Constitution allows." *Welch v. United

States*, 136 S. Ct. 1257, 1262 (2016).

This issue was presented in the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir.

2015). There, the appellate court applied the "same mode of analysis" to Section 16's provision,

identical to the language in Section 924(c)(3)(B), "and the ACCA's residual clause" and then

determined that the residual clause of Section 16 suffered from the same flaws that led the

Supreme Court to invalidate the ACCA's residual clause in *Johnson*. The Sixth Circuit, too, in

the context of a Section 16 analysis, held that the "residual definition of 'crime of violence'" was

"void for vagueness." *Shuti v. Lynch*, 828 F.3d 440, 451 (6th Cir. 2016), *petition for certiorari

filed* Feb. 13, 2017, 16-991. *See also United States v. Edmundson*, --- F. Supp. 3d ---,  2015 WL

9582736 (holding that 18 U.S.C. § 924(c)(3)(B) "suffers from exactly the same double

indeterminacy as the ACC[A] residual clause"); *but see* United States v. Gonzalez-Longoria, 831

F.3d 670, 677 (5th Cir. 2016) (distinguishing immigration from criminal laws, holding that

despite *Johnson*, "18 U.S.C. § 16(b) is not unconstitutionally vague on its face").[5]   This question

will likely be decided by the Supreme Court sometime before the end of the October 2017 Term.

*See Lynch v. Dimaya*, 15-1498.

Section 924(c)(3)(B), like the ACCA's residual clause, thus requires the "ordinary case"

analysis to assess the risk involved in a predicate offense and how risky that ordinary case is.

Because these are the identical analytical steps that invalidated the ACCA's residual clause,

18 U.S.C. § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process analysis

set forth in *Johnson* (2015).  As a consequence, the residual clause cannot constitutionally be

employed when determining whether a Hobbs Act crime supports a conviction under 18 U.S.C. §

924(c).

Because a Hobbs Act robbery and a Hobbs Act robbery conspiracy under 18 U.S.C. §

1951 categorically fail to qualify as "crimes of violence" under 18 U.S.C. § 924(c)(3)(A)'s force

clause, and because 18 U.S.C. § 924(c)(3)(B)'s residual clause is unconstitutionally vague,

Count Three of the superseding indictment should be dismissed.

---

[5] In litigating *Johnson* (2015), the government, through the Solicitor General, noted that the definitions of a crime of violence in both 18 U.S.C. §§ 924(c)(3)(B) and 16(b) are identical and conceded that the phrases at issue in *Johnson* (2015) and here pose the same problem, stating:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23).  This Court should hold the government to that concession.

31

## IV.   CONCLUSION

For all the reasons set forth herein, Count Three of the superseding indictment should be dismissed.

Dated:  July 10, 2017                                    Respectfully submitted,
          New York, New York

                                                       _____/s/_____

                                                       JOYCE C. LONDON, ESQ.
                                                       Joyce C. London, P.C.
                                                       *Attorney for Charles Thomas*
                                                       59 Maiden Lane, Sixth Floor
                                                       New York, New York 10038
                                                       Tel.:   (212) 964-3700
                                                       Email: jclondonlaw@aol.com